IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DAVID DELOCK; ALISHA MEREDITH;
ERIC MOTLEY; STEPHEN CARLSON;
DEBORAH GOLDHORN; JOHNNY
BROWN; BOBBY WALKER; TIMOTHY
PIERCE; BRIAN PEASE; CHRIS
WILSON; NICHOLE LEDFORD; and
BRIAN HATHAWAY, all individually
and on behalf of others similarly situated                    PLAINTIFFS

v.                              No. 4:11-cv-520-DPM

SECURITAS SECURITY SERVICES USA,
INC.; and SECURITAS SERVICES, INC.                          DEFENDANTS

ORDER

This case arises at the intersection of the Fair Labor Standards Act,

employment at-will, the Federal Arbitration Act, and an arbitration

agreement. When they filed their complaint, all of the Plaintiffs worked for

one of the two Securitas Defendants. Most were security guards, though the

lead Plaintiff, David Delock, worked as a site supervisor. The Court will refer

to all the Plaintiffs as the guards or the employees and to the Defendants as

Securitas. The guards allege that Securitas forced them to work off-the-clock

in violation of the FLSA and the Arkansas Minimum Wage Act. They seek to

pursue a collective action. Securitas moves to either dismiss or stay the case,

arguing that the guards are subject to an arbitration agreement. The guards say they never agreed to arbitration; Securitas circulated the proposed agreement, but the guards filed this case a few days later and before the deadline for returning an acknowledgment of the agreement. There is no dispute that, if it is an enforceable contract, the arbitration agreement covers all the issues in this case. Did the guards and Securitas make an enforceable contract to arbitrate all their employment disputes?

**1. The Law.** Under § 2 of the FAA, written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, ___, 129 S. Ct. 1896, 1901 (2009). "State law, therefore, is applicable to determine which contracts are binding under § 2 . . . *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Arthur Andersen*, 556 U.S. at ___, 129 S. Ct. at 1902 (quotations & alteration omitted; emphasis original). Arkansas follows the familiar contract-formation principles: competent parties, subject matter, legal consideration, mutual agreement, and mutual obligations. *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 218, 289 S.W.3d

466, 470 (2008).  Here the fight is at the threshold: "whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent." *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 80 (2005).  The parties disagree about definiteness and acceptance.

**2.   The Facts.**  It is undisputed that all the guards were at-will employees.  This gave both Securitas and the guards the right to end their employment relationship at any time. *Crawford County v. Jones*, 365 Ark. 585, 590, 232 S.W.3d 433, 438 (2006).  In the Security Officer Handbook, Securitas "reserve[d] the right . . . to alter the terms of [the employees'] employment, including changing [their] wages, assignments or shifts as business necessitate[d] and [could] alter any other term or condition of employment, with or without cause, with or without notice[.]"  Securitas also reserved the right "to delete, add to or otherwise modify policies, practices or procedures." Securitas said it would notify the guards "[w]hen modifications and/or changes occur."  It is undisputed that all of the guards received a copy of the Handbook, which contained these statements or ones materially similar.

-3-

In a company-wide rollout, Securitas distributed copies of the arbitration agreement to the guards on Friday, 24 June 2011. The two-page agreement was sandwiched between two other pieces of paper—a note from management and an acknowledgment form. The acknowledgment form said this: "BY SIGNING BELOW, I AM ACKNOWLEDGING RECEIPT OF THE SECURITAS SECURITY SERVICES USA, INC. DISPUTE RESOLUTION AGREEMENT, EFFECTIVE IMMEDIATELY." The packet is attached as Appendix A. None of the guards signed the acknowledgment form. Instead, they met with their lawyer and filed this lawsuit on Tuesday, 28 June 2011 before noon—the deadline, according to management's note,* for returning their signed acknowledgment forms. All of the guards worked between receiving the arbitration agreement and filing their lawsuit; and they continued to work after filing their lawsuit.

3.  **Definiteness.**   The guards first argue that the disseminated arbitration agreement was not an offer. They say: it was just an example of an offer; it did not contain any language about whether the agreement was

---

*The note actually read "TUESDAY JUNE 27TH." 27 June 2011 was a Monday. The Court construes this ambiguity against Securitas. *Taylor v. Hinkle*, 360 Ark. 121, 134, 200 S.W.3d 387, 395 (2004).

meant to be a contract; and the agreement did not set out a means of acceptance. The guards conclude that, given the lack of definiteness, the parties made no contract about arbitration.

"To bind the employer, an offer must be definite in form and must be communicated to the offeree." *Aon Risk Services, Inc. v. Meadors*, 100 Ark. App. 272, 281, 267 S.W.3d 603, 610 (2007). "A writing that is indefinite is incomprehensibly vague or incapable of being understood[.]" *Ibid.* The question is whether the circulated arbitration agreement was "intended as an offer and accepted as such or [was] merely [a] statement[ ] of policy and practice." *Ibid.* Lack of definiteness is not the same as ambiguity; "ambiguity does not prevent the formation of a contract[.]" *Ibid.*

The distributed document was entitled "Dispute Resolution Agreement." The agreement makes the Federal Arbitration Act the governing law and lists potential claims covered by the agreement. Among other claims, the agreement covers disputes about "any city, county, state or federal wage-hour law[.]" The agreement says, in bold typeface, that the covered disputes are to be resolved through binding arbitration and not by a court or through a jury trial. The agreement contains other details about how the parties will

-5-

choose an arbitrator and how one can make an arbitration demand. The agreement prohibits class, collective, or representative actions. And it contains paragraphs about fees, remedies, and anti-retaliation. The last paragraph contains a severability clause and states that the agreement "is the full and complete agreement relating to the formal resolution of employment-related disputes."

Nothing about this arbitration agreement is indefinite. It contains specific terms about how Securitas and its employees will resolve any legal disputes going forward. And the fact that the contract does not specify a particular means of acceptance is of no moment because all the guards were at-will employees. (More on this point later.) Further, like the memo in *Aon*, Securitas's arbitration agreement was "more than a mere statement of policy or a vague promise regarding future events." 100 Ark. App. at 282, 267 S.W.3d at 610 (comparing *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983), which held handbook statements that the banking industry was very stable and that job security was one reason why so many bank employees had five or more years of service were general statements of

policy). On these facts, the Court concludes that the arbitration agreement was definite enough to be an offer.

**4. Acceptance.** The guards argue next that they categorically rejected the arbitration agreement when they refused to sign the acknowledgment form and filed this lawsuit before Tuesday, 28 June 2011 at noon. They again point to the fact that the arbitration agreement contained no provision specifying the means of acceptance. There is no dispute that all the guards returned to work during the three days between when they got the arbitration agreement on a Friday and when they sued on the following Tuesday. Securitas says that the guards' decision to keep working signified their acceptance and was their acceptance.

In *Crain Industries, Inc. v. Cass*, the Arkansas Supreme Court settled the controlling law.

> In the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer.

-7-

305 Ark. 566, 573, 810 S.W.2d 910, 914 (1991) (quoting *Pine River*, 333 N.W.2d at 627); *see also Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 295, 948 S.W.2d 388, 393–94 (1997).

Recognizing this law, the guards argue against "implying" a provision in the agreement that continued employment equals acceptance. They distinguish their case from several others decided in this Circuit. There, the new agreement or handbook spelled out that an employee's continued employment signified his acceptance; here, the agreement did not. *McNamara v. Yellow Transportation, Inc.*, 570 F.3d 950 (8th Cir. 2009); *Berkley v. Dillard's Inc.*, 450 F.3d 775 (8th Cir. 2006); *McClendon v. Sherwin Williams, Inc.*, 70 F. Supp. 2d 940 (E.D. Ark. 1999). But the companies' inclusion of a "continued employment equals acceptance" provision was not the sole deciding factor in any of the cases. Yes, the courts mentioned it; but none of the courts held that such a statement is essential before the legal principle articulated in *Crain Industries* applies.

*Crain Industries* established the governing Arkansas law. 305 Ark. at 573, 810 S.W.2d at 914. And neither that precedent nor any of its Arkansas progeny focus on whether the new agreement or the handbook stated that an

at-will employee's continued employment constituted acceptance of and consideration for the new contract. *Crain Industries*, 305 Ark. at 573, 810 S.W.2d at 914; *see also Sexton Law Firm*, 329 Ark. at 295, 948 S.W.2d at 393; *City of Huntington v. Mikles*, 96 Ark. App. 213, 218–19, 240 S.W.3d 138, 142–43 (2006). This Court holds, in this at-will situation, that when the guards kept working after receiving the new arbitration agreement, they accepted it. And their acceptance supplied consideration for this new term of their employment. Their prompt filing of this lawsuit does not make a legal difference on the formation issue.

5. **A New Wrinkle.** Since the Court held a hearing in this case last September, the parties filed supplemental briefs on a new NLRB decision, *In re D.R. Horton, Inc.*, 357 N.L.R.B No. 184 (3 Jan. 2012). *Horton* holds "that employers may not compel employees to waive their [National Labor Relations Act] right to collectively pursue litigation of employment claims in *all* forums, arbitral and judicial." 357 N.L.R.B. No. 184, at *16. The guards say *Horton* applies here with full force. Securitas's arbitration agreement, they point out, likewise forbids the employees from pursuing collective action in all forums for Securitas's alleged FLSA violations. The anti-class-action

provision, the guards continue, undermines the whole agreement. The guards urge the Court to therefore deny Securitas's motion to dismiss or stay pending arbitration.

The Court appreciates the parties' briefs. And the Court is working through this complicated issue. But the Court needs a bit more time to decide *Horton*'s reach in this case. One thing is clear. The guards and Securitas entered into a valid and enforceable arbitration agreement, which contains a severability clause that speaks to this issue: "In the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration." Whether the class waiver is invalid or not, this case is going to arbitration. The open question is whether the guards will be able to pursue a collective action there. And the Court will answer that question soon.

*     *     *

Securitas's motion to stay this case and to compel arbitration, *Document No. 11*, granted. *Green v. SuperShuttle International, Inc.*, 653 F.3d 766, 769–70

-10-

(8th Cir. 2011); 9 U.S.C. § 3.  The guards' motion to file their first amended complaint, *Document No. 18*, denied as moot without prejudice.  The guards' motion to form a collective action, *Document No. 38*, and Securitas's motion to stay the motion, *Document No. 40*, both denied as moot without prejudice. The guards' motion to file a supplemental brief, *Document No. 55*, denied.  The Court, however, will consider the cases appended to the guards' motion, those noted in Securitas's response, as it continues to work on the *Horton* issue.

So Ordered.

NPMarshall J.

D.P. Marshall Jr.
United States District Judge

29 March 2012

-11-

# Appendix A

**EACH OFFICER IS TO READ AND THEN
SIGN THE THIRD PAGE OF THIS
ARBITRATION AGREEMENT. DO NOT TEAR
ANY PAGES OFF. I NEED ALL THREE PAGES
RETURNED TO THE OFFICE BY TUESDAY
JUNE 27TH. IF ANY OFFICER DOES NOT
SIGN THIS BY NOON ON THE 27TH, THEY
WILL BE TAKEN OFF THE SCHEDULE
UNTIL FURTHER NOTICE.**

**THANK YOU
BRANCH MANAGEMENT**

Roy
This is your copy for your officers

Kerry

### SECURITAS SECURITY SERVICES USA, INC. DISPUTE RESOLUTION AGREEMENT

1. This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Securitas Security Services USA, Inc. or one of its affiliates, subsidiaries or parent companies ("Company") or termination of employment. Nothing contained in this Agreement shall be construed to prevent or excuse Employee from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures. Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement. The Agreement also applies, without limitation, to disputes regarding the employment relationship, any city, county, state or federal wage- hour law, trade secrets, unfair competition, compensation, breaks and rest periods, uniform maintenance, training, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims (excluding workers compensation, state disability insurance and unemployment insurance claims). Claims may be brought before an administrative agency but only to the extent applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration. Disputes that may not be subject to pre-dispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement. This Agreement shall not be construed to require the arbitration of any claims against a contractor that may not be the subject of a mandatory arbitration agreement as provided by section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), section 8102 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims.

2. The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee last worked for the Company, unless each party to the arbitration agrees in writing otherwise. If the Employee no longer resides in the general geographical vicinity where he or she last worked for the Company, the Employee and the Company shall agree to a location of the arbitration within 45 miles of where the Employee resides.

1

3. A demand for arbitration must be in writing and delivered by hand or first class mail to the other party within the applicable statute of limitations period. Any demand for arbitration made to the Company shall be provided to the Company's Legal Department Securitas USA, Legal Department, 4330 Park Terrace Drive, Westlake Village, CA, 91361. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

4. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. However, there will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or representative action ("Class Action Waiver"). Notwithstanding any other clause contained in this Agreement, the preceding sentence shall not be severable from this Agreement in any case in which the dispute to be arbitrated is brought as a class, collective or representative action. Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

5. Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

6. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration. The Arbitrator shall not have the power to commit errors of law or legal reasoning, and where allowed by applicable law of the jurisdiction in which the arbitration is held the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

7. It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

8. This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. In the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

2

ACKNOWLEDGMENT OF RECEIPT OF THE SECURITAS USA DISPUTE RESOLUTION
AGREEMENT

BY SIGNING BELOW, I AM ACKNOWLEDGING RECEIPT OF THE SECURITAS SECURITY
SERVICES USA, INC. DISPUTE RESOLUTION AGREEMENT, EFFECTIVE IMMEDIATELY.

Employee Name: _____

Signature: _____

Date:_____

Witness Name:

Signature: _____

3