IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DAVID DELOCK; ALISHA MEREDITH;
ERIC MOTLEY; STEPHEN CARLSON;
DEBORAH GOLDHORN; JOHNNY
BROWN; BOBBY WALKER; TIMOTHY
PIERCE; BRIAN PEASE; CHRIS
WILSON; NICHOLE LEDFORD; and
BRIAN HATHAWAY, all individually
and on behalf of others similarly situated          PLAINTIFFS

v.                          No. 4:11-cv-520-DPM

SECURITAS SECURITY SERVICES USA,
INC.; and SECURITAS SERVICES, INC.                 DEFENDANTS

ORDER

In its March Order, *Document No. 57*, the Court left open the issues

raised by *In re D.R. Horton, Inc.*, 357 N.L.R.B. No. 184 (3 Jan. 2012). The Court

has continued to study the parties' briefs and the cases. The question is

whether, in light of *Horton*, the parties' class-action waiver is enforceable.

**1. Severability.** The Court made a mistake about severability in its

March Order. *Document No. 57, at 10.* First, immediately after the bold-faced

sentence prohibiting class or collective proceedings, the parties' agreement

says this: "Notwithstanding any other clause contained in this Agreement,

the preceding sentence shall not be severable from this Agreement in any case

in which the dispute to be arbitrated is brought as a class, collective or representative action." *Document No. 57, at 15*. The Court missed the agreement's you-can't-sever-this provision.

Moreover, the general severability clause, on which the Court relied, has a deeper legal meaning than the Court discerned. "In the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver is deemed to be unenforceable, the Company and the Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration." *Document No. 57, at 15*. The parties' fall-back position — agreed silence — means they made no agreement to have a class or collective action in arbitration. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, ___, 130 S. Ct. 1758, 1775–76 (2010). Class or collective arbitration is thus simply not a possibility under the parties' agreement. *Ibid.* That brings the enforceability issue front and center.

**2. Jurisdiction.** Securitas pauses on jurisdiction. Rightly so. The Court agrees that it has jurisdiction to consider and decide the National Labor Relations Act issue raised by Delock's argument from the *Horton* decision.

This is a collateral issue in Delock's lawsuit alleging that Securitas violated the Fair Labor Standards Act. *Connell Constr. Co. v. Plumbers and Steamfitters Local Union No. 100*, 421 U.S. 616, 626 (1975); *ABF Freight System, Inc. v. Int'l Brotherhood of Teamsters*, 645 F.3d 954, 964–65 (8th Cir. 2011).

**3. *Horton.*** Until recently, it seemed settled law that an employee's statutory right to pursue a wage claim as part of a collective action, 29 U.S.C. § 216(b), could be waived in favor of individual arbitration. The Courts of Appeals that had considered this issue had so held. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002).* These FLSA cases harmonized with the Supreme Court's many pro-arbitration decisions during the last two decades.

In *Gilmer v. Interstate/Johnson Lane Corp.*, for example, the Court upheld an agreement that sent an age-discrimination claim to arbitration. 500 U.S. 20 (1991). The Court rejected the argument that the absence in arbitration of the

---

*Two other circuits came to the same conclusion in unpublished opinions whose precedential value is cloudy. *Vilches v. The Travelers Companies, Inc.*, 413 F. App'x 487, 494 n.4 (3d Cir. 2011); *Horenstein v. Mortgage Market, Inc.*, 9 F. App'x 618, 619 (9th Cir. 2001).

-3-

collective proceedings allowed by the ADEA frustrated the statute's purpose, and thus undermined the agreement to arbitrate individually. 500 U.S. at 32. Some of this was *dictum*. The *Gilmer* arbitration agreement was silent about collective proceedings; the applicable New York Stock Exchange rules allowed them; and, as the Court noted, the EEOC could still pursue age-discrimination claims on a class basis. 500 U.S. at 23, 32. But the Court's considered words—no legal problem was presented even if arbitration eliminated the possibility for an employee to pursue a collective action of a statutory claim—carry some weight, even if not part of the Court's holding. *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (Easterbrook, J.).

More recent decisions, in a variety of contexts, confirm the Supreme Court's solicitude for arbitration on whatever terms the parties have agreed. In *14 Penn Plaza LLC v. Pyett*, the Court enforced a collective bargaining agreement provision requiring arbitration of age-discrimination claims. 556 U.S. 247 (2009). In *Stolt-Nielsen*, drawing on the foundational principle that the Federal Arbitration Act makes the process a matter of consent, the Court concluded "that parties may specify *with whom* they choose to arbitrate their disputes." ___ U.S. at ___, 130 S. Ct. at 1774 (emphasis original). Class

-4-

arbitration thus may not be conducted absent consent to it. ___ U.S. at ___, 130 S. Ct. at 1775.  In *Concepcion*, the Court held that the FAA preempted a California common-law rule that barred class-action waivers as unconscionable contractual terms. *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740 (2011).  All this precedent makes the law's trend unmistakable.

Then came *Horton*.  It began as a dispute alleging misclassification under the Fair Labor Standards Act.  The employee and the employer had an agreement requiring arbitration on an individual basis of all employment-related disputes and barring collective proceedings.  After the company refused to recognize a notice of collective arbitration, the employee filed a charge with the National Labor Relations Board.  The employee prevailed. The National Labor Relations Act protects employees' right "to engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]"  29 U.S.C. § 157.  Proceeding collectively, either in court or in arbitration, the Board concluded, is concerted activity.  Therefore, "employers may not compel employees to waive their NLRA right to

collectively pursue litigation of employment claims in *all* forums, arbitral and judicial." 357 N.L.R.B. No. 184, at *16 (emphasis original).

The two sitting NLRB members concluded that no conflict existed between the National Labor Relations Act and the Federal Arbitration Act in these circumstances. 357 N.L.R.B. No. 184, at *10–*16. First, there was no equal-footing problem because the NLRA regulates many employee/employer agreements, not just arbitration agreements. *Cf. Concepcion,* ___ U.S. at ___, 131 S. Ct. at 1746–47. Second, concerted action is a substantive right under the NLRA, not a matter of procedure; and precedent holds that an arbitration agreement may not require a party to give up a substantive statutory right. *Gilmer,* 500 U.S. at 26. Third, nothing in the FAA suggests that it requires enforcing an arbitration agreement that is inconsistent with the NLRA. 357 N.L.R.B. No. 184, at *14–*15. Finally, the Board concluded that, if the two statutes conflict, the Norris-LaGuardia Act requires the FAA to yield. 357 N.L.R.B. No. 184, at *16. In explaining its reasoning, the Board considered *Gilmer, Pyett, Stolt-Nielsen,* and *Concepcion.* It did not have the benefit of *CompuCredit Corp. v. Greenwood,* ___ U.S. ___, 132 S. Ct. 665 (2012), which came down about a week after the Board's decision.

The company has petitioned the Fifth Circuit for review of the Board's decision. *D.R. Horton, Inc. v. National Labor Relations Board*, No. 12-60031 (5th Cir. filed 13 January 2012). The case is in mid-briefing. No Court of Appeals has yet spoken on the matter. The District Courts have divided. *Compare, e.g., Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 1309171 (N.D. Cal. 13 Apr. 2012), *and De Oliveira v. Citicorp North America, Inc.*, No. 8:12-cv-251-T-26TGW, 2012 WL 1831230 (M.D. Fla. 18 May 2012) (both declining to follow *Horton*), *with, e.g., Owen v. Bristol Care, Inc.*, No. 11-04258-CV-FJG, 2012 WL 1192005 (W.D. Mo. 28 Feb. 2012), *and Herrington v. Waterstone Mortg. Corp.*, No. 11-cv-779-bbc, 2012 WL 1242318 (W.D. Wis. 16 Mar. 2012) (both following *Horton*).

The Board's construction of the National Labor Relations Act "is entitled to considerable deference and must be upheld if it is reasonable and consistent with the policies of the Act." *St. John's Mercy Health Systems v. N.L.R.B.*, 436 F.3d 843, 846 (8th Cir. 2006) (quotation and citation omitted). But the reason for the law ceasing, the law itself must cease: the Board has no special competence or experience in interpreting the Federal Arbitration Act. And this Court is "not obligated to defer to [the Board's] interpretation of

Supreme Court precedent under *Chevron* or any other principle." *New York New York, LLC v. N.L.R.B.*, 313 F.3d 585, 590 (D.C. Cir. 2002) (quotation omitted); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 529 n.9 (1984).

> The Federal Arbitration Act's core provision speaks in broad terms.

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This and companion provisions "manifest a liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 25 (internal quotation omitted). Section 2 requires this Court to enforce the parties' agreement to arbitrate "according to [its] terms[,]" *CompuCredit*, ___ U.S. at ___, 132 S. Ct. at 669, absent some good legal reason that would undermine any similar contract. Among the kind of terms that enjoy presumptive validity is the collective-action waiver in the Delock/Securitas agreement: it prescribes with whom the parties will arbitrate. *Stolt-Nielsen*, ___ U.S. at ___, 130 S. Ct. at 1774. The FAA governs "even when the claims at issue are federal statutory

claims, unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit*, ___ U.S. at ___, 132 S. Ct. at 669 (internal quotation omitted).

If the competing statute was the Fair Labor Standards Act, the Fifth Circuit's persuasive decision in *Carter* would undermine Delock's attack on the arbitration agreement. First, FLSA claims are subject to arbitration. Nothing in the FLSA's text or legislative history indicates that Congress excepted those claims from the FAA's mandate. 362 F.3d at 297–98. Second, collective proceedings under FLSA are a matter of procedure, not substance. The Fifth Circuit's reasoning on this point merits quotation.

> [W]e reject the Carter Appellants' claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA. The Supreme Court rejected similar arguments concerning the ADEA in *Gilmer*, despite the fact that the ADEA, like the FLSA, explicitly provides for class action suits. 500 U.S. at 32, 111 S. Ct. 1647. What is more, the provision for class actions in the ADEA *is* the FLSA class action provision, which the ADEA expressly adopts. 29 U.S.C. § 626(b). Accordingly, *Gilmer*'s conclusion in this respect applies with equal force to FLSA claims.

*Carter*, 362 F.3d at 298 (emphasis original). In terms of Delock's underlying statutory claim under the FLSA, the FAA's mandate should prevail.

But the contrary congressional command Delock asserts is in the National Labor Relations Act, not the FLSA. It is the other-concerted-activities part of the NLRA's § 7.

### § 157.   Right of employees as to organization, collective bargaining, etc.

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, *and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection,* and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157 (emphasis added). When employees band together to assert FLSA claims, the Board concluded in *Horton*, they are pursuing concerted activities for mutual aid and protection, which the NLRA protects. 357 N.L.R.B. No. 184, at *1.

This conclusion is a reasonable reading of the statute. And it is consistent with settled law. As the Eighth Circuit recently observed, "a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment *is* 'concerted activity' under § 7 of the National Labor Relations Act." *Brady v. National Football League,* 644 F.3d 661,

-10-

673 (8th Cir. 2011) (emphasis original).  The Court therefore defers and

follows the Board's reading on this point.  *St. John's Mercy Health Systems*, 436

F.3d at 846.

The Court declines to endorse, however, the Board's application of the

Federal Arbitration Act or its reading of the precedent applying that Act.  The

NLRA, as interpreted in *Horton*, conflicts with the FAA, as interpreted by the

Supreme Court.  The Board says employees covered by the NLRA must have

some forum—in arbitration or in court—to pursue collective claims about

their employment.  357 N.L.R.B. No. 184, at *16.  A fair reading of the FAA

and the precedents, on the other hand, requires this Court to enforce the

Delock/Securitas agreement to arbitrate all employment-related disputes

individually, not collectively.  *E.g., Stolt-Nielsen*, ___ U.S. at ___, 130 S. Ct. at

1774.  The *Gilmer, Concepcion* line of cases provides the analytic framework for

addressing this statutory collision.

Falling back to either an express repeal by the Norris-LaGuardia Act or

an implied repeal by the National Labor Relations Act does not resolve the

collision.  *Cf. Horton*, 357 N.L.R.B. No. 184, at *14, *16 n.26.  Though Congress

first enacted the FAA in 1925, it reenacted the statute in 1947—*after* passing

-11-

the Norris-LaGuardia Act and reenacting the NLRA. Federal Arbitration Act, ch. 213, 43 Stat. 883 (1925); Norris-LaGuardia Act, ch. 90, 47 Stat. 70 (1932); National Labor Relations Act, ch. 120, 61 Stat. 136 (1947); Federal Arbitration Act, ch. 392, 61 Stat. 670 (1947). The terms of § 2 of the Federal Arbitration Act have never varied.   The Board stumbled on the statutory history by concluding that the FAA had to give way because of when Congress had enacted these statutes.

*CompuCredit* instructs that there must be a "contrary congressional command" to override the FAA's mandate. ___ U.S. at ___, 132 S. Ct. at 669 (quotation omitted). *Gilmer* speaks of looking for a congressional "intention to preclude a waiver of judicial remedies for the statutory rights at issue." 500 U.S. at 26 (quotation omitted).   "If such an intention exists, it will be discoverable in the text of the [NLRA], its legislative history, or an inherent conflict between arbitration and the [NLRA's] underlying purposes." *Ibid.* There are two important threshold points: Delock must make this showing; and "a healthy regard for the federal policy favoring arbitration[,]" must inform the inquiry. 500 U.S. at 26 (quotation omitted).

The NLRA's text contains no command that is contrary to enforcing the FAA's mandate.   The Act's protection of concerted activities does not guarantee an unwaivable right to proceed as a group in either litigation or arbitration.  The Age Discrimination in Employment Act and the Fair Labor Standards Act offer employees collective actions.  But this option was an insufficient statutory command.  *Gilmer*, 500 U.S. at 32.  Statutory references to having causes of action, filing in court, allowing suits, and even pursuing class actions are insufficient commands too.  *CompuCredit*, ___ U.S. at ___, 132 S. Ct. at 670–71.  The NLRA's text, even with the uncontroversial gloss that group litigation is concerted activity, likewise gives an insufficient command against the FAA.

The parties having made no argument from the NLRA's legislative history, the Court moves to the conflict of statutory purposes.  *Gilmer*, 500 U.S. at 26.  It exists.  There is no doubt that, as the Board said, the NLRA's core protects the right to engage in collective action about workplace conditions.  *Horton*, 357 N.L.R.B. No. 184, at *4.  There is likewise no doubt about the strong federal policy favoring arbitration on the terms agreed, a policy given full voice in recent precedent.  *E.g.*, *Stolt-Nielsen*, ___ U.S. at ___, 130 S. Ct. at

1773–75. For several reasons, the Court concludes that the NLRA bends to the FAA.

First, while the Board said its decision did not favor litigation over arbitration, in practice it would. Collective arbitration can no more be manufactured by the Board than it can by the California Supreme Court. *Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1750–51. While the United States Supreme Court left open the possibility of consensual class arbitration, it strongly criticized that process. ___ U.S. at ___, 131 S. Ct. at 1750–53. In the beginning and the end, arbitration is a matter of consent. Groups of employees proceeding collectively will be in court absent agreement all around to have class arbitration. And that agreement cannot be mandated. *Stolt-Nielsen*, ___ U.S. at ___, 130 S. Ct. at 1773–75. *Horton's* result, then, would be more collective litigation and less arbitration. This result is at odds with the "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, ___ U.S. ___, ___, 132 S. Ct. 23, 25 (2011) (quotation omitted).

Second, adopting the Board's reasoning would lead to a patchwork. An employee and an employer can agree to resolve the employee's statutory

-14-

claims in arbitration. *Gilmer*, 500 U.S. at 35. A union can make the same bargain for all its employee members. *Pyett*, 556 U.S. at 251. But whatever an individual and his or her employer may have agreed, if two or more employees jointly pursue a statutory claim, *Horton*'s concerted-action rationale would require that the matter proceed collectively. This quilt of possibilities introduces uncertainty and complexity. And it would treat similarly situated individuals differently without adequate reason.

Third, though the Board said that the impact of its decision would be small, the Court respectfully disagrees. Pick any kind of employment-related claim: race discrimination, unpaid wages, sex discrimination. Under the *Horton* rationale, no agreement to resolve the claim in arbitration on an individual basis can be enforced if two or more employees assert the claim in concert. That would be a sweeping change in the law.

Delock has not demonstrated that the National Labor Relations Act's protection of concerted activities overrides the FAA's mandate to enforce his arbitration agreement with Securitas. *CompuCredit*, ___ U.S. at ___, 132 S. Ct. at 669; *Gilmer*, 500 U.S. at 26. This conclusion best advances the "liberal federal policy favoring arbitration" and the "fundamental principle that

arbitration is a matter of contract[.]" *Concepcion*, ___ U.S. at ___, 131 S. Ct. at 1745 (quotation omitted). Applying *CompuCredit* and *Gilmer*, the FAA prevails in the conflict with the NLRA. The Delock/Securitas arbitration agreement—including the class-action waiver—is enforceable.

**4. Interlocutory Appeal.** Delock seeks to pursue one. Securitas resists. Under 28 U.S.C. § 1292(b), one aspect of the case merits interlocutory review, another does not. *Union County, Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008).

The contract-formation issues decided a few months ago are commonplace. The Court sees no substantial ground for a difference of opinion about the governing Arkansas law. The Court's earlier Order provides important background; it lays out the essential undisputed facts and incorporates the parties' arbitration agreement. But certifying the Order for appeal now would not "materially advance the ultimate termination of the litigation." *Union County*, 525 F.3d at 646. The formation issues decided in the Court's March 2012 Order, *Document No. 57*, therefore do not merit interlocutory review.

That *Horton* makes the enforceability of the parties' arbitration agreement a complicated question does not satisfy § 1292(b). The statute "was not intended merely to provide review of difficult rulings in hard cases." *Union County*, 525 F.3d at 646 (quotation omitted). The lack of guiding precedent from the Court of Appeals is likewise insufficient, though novelty weighs in the balance. 525 F.3d at 646, 647. "A motion for certification must be granted sparingly, and the movant bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994). Guided by the statutory factors, the Court exercises its discretion to certify this Order.

First, the enforceability of the parties' arbitration agreement notwithstanding *Horton* presents a controlling question of law. No facts are disputed. The efficacy of the class-action waiver is not a discretionary decision. *Cf. Control Data Corp. v. Int'l Business Machines Corp.*, 421 F.2d 323, 326 (8th Cir. 1970). It is a pure legal question of statutory construction informed by precedent: how should the conflict between the National Labor Relations Act and the Federal Arbitration Act raised by *Horton* and by the

-17-

parties' arbitration agreement be resolved?  As well expressed by Judge Posner, this is the kind of question within § 1292(b)'s reach.  "The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000).

This question is controlling.  If this Court has answered correctly, then the guards' FLSA claims belong in arbitration, where they will be handled one by one. If this Court has answered incorrectly, then the guards' claims belong in court, with the opportunities for certification, notice, and opt-in by fellow employees. No danger exists for a advisory opinion on a question that cannot yet be asked with clarity.  *Cf. Control Data Corp.*, 421 F.2d at 326–27.  The enforceability question is controlling because it can "head off protracted, costly litigation" about where the parties' dispute belongs and how it will be resolved. *Ahrenholz*, 219 F.3d at 677.

Second, there is a substantial ground for difference of opinion about the enforceability of the parties' arbitration agreement.  The National Labor

Relations Board has concluded that this kind of collective-action-waiving contract is unenforceable under the NLRA. From *Gilmer* to *Concepcion* to *CompuCredit*, the Supreme Court has applied the Federal Arbitration Act broadly, enforcing agreements in a variety of contexts pursuant to the strong federal policy favoring arbitration. After *Horton*, district courts have reached different conclusions about the enforceability of arbitration agreements like the one between Delock and Securitas. *See supra* at p. 7. There is no "dearth of cases[.]" *Cf. Union County*, 525 F.3d at 647. There are plenty of cases; and they sharply conflict.

Third, the statute asks whether an immediate appeal "may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). Resolution of the controlling and contested issue of law "must promise to *speed up* the litigation." *Ahrenholz*, 219 F.3d at 675 (emphasis original). It does.

If this Court is mistaken about enforceability, then after these twelve guards' claims have been arbitrated individually, and after those awards have been confirmed (or not, as may be), 9 U.S.C. § 9, and after the Court of Appeals reverses and returns the case for adjudication as a collective action, 9 U.S.C. § 16(a), the parties will have to start over. That long road would

-19-

waste everyone's scarce resources.   True, if this Court has decided enforceability correctly, the time and cost of appeal will be incurred sooner rather than later.   But class waivers are now ubiquitous in employment-related agreements.   And getting definitive guidance from a Court of Appeals' decision would help resolve this case, like cases, and would bring more certainty into the marketplace.

Securitas argues that an immediate appeal will frustrate the strong pro-arbitration federal policy.   At the margin, yes.   But the FAA allows for this possibility.   The Act recognizes the propriety of an interlocutory appeal of an order compelling arbitration if § 1292(b) is satisfied.   9 U.S.C. § 16(b).   All material things considered, the Court concludes that an interlocutory appeal holds promise for speeding up this litigation.

*     *     *

The Court confirms its earlier ruling staying this case and compelling arbitration.   Motion, *Document No. 58*, granted in part and denied in part.   The Court certifies that this "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from [this] order may materially advance the ultimate

termination of [this] litigation[.]" 28 U.S.C. § 1292(b). The Court stays the

initiation of arbitration until 31 October 2012 — so Delock can seek permission

to take an interlocutory appeal, Securitas can respond, and the Court of

Appeals can exercise its informed discretion under the statute. The parties

should keep this Court informed about developments in the higher Court. If

the Court of Appeals permits the interlocutory appeal, then the stay of

arbitration shall be extended automatically until the Eighth Circuit issues its

mandate.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

*1 August 2012*